Joseph W. **CHASTAIN** and Travelers Insurance Co., Plaintiffs,

v.

Lillian J. **EVENNOU** and Le Roy R. Grassman, Defendants.

No. C 4–64.

United States District Court
D. Utah,
Central Division.
June 26, 1964.

D. Howe Moffat, Salt Lake City, Utah, for plaintiffs.

Ernest F. Baldwin, Jr., Salt Lake City, Utah, for defendants.

CHRISTENSEN, District Judge.

This is a suit to recover damages for personal injuries resulting from an automobile collision. By agreement, plaintiff was examined by a physician designated by the defendants. While an order as provided by Rule 35,[1] Federal Rules of

---

1. Rule 35 F.R.Civ.P. "Physical and Mental Examination of Persons

"(a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner,

Civil Procedure, was not obtained from the court, it is clear that the examination was voluntarily accorded (as is customary in this district) with that rule in mind, and that, in accordance with the usual understanding, copies of reports were to be exchanged in harmony with subdivision (b) of the rule.

The plaintiff had been examined or treated by Dr. Neal C. Capel, who made reports under dates of June 28, 1963 and April 8, 1964; and by Dr. James A. Elkins, who made reports under dates of March 18, 1963, July 28, 1963, September 13, 1963, October 2, 1963, and February 7, 1964. Copies of these reports, except the September 13, 1963, report, were furnished to counsel for the defendant in exchange for a copy of the report of the physician designated by the defendant.

A copy of the September report has been lodged with the court *in camera* to determine whether it, too, should be turned over to opposing counsel in view of the plaintiff's contention that it contains comments which are mere gratuitous and irrelevant conclusions improperly incorporated by the writer.

One of Dr. Capel's reports furnished to the other side contains the following statement directed to a subject matter involved in the questioned report of Dr. Elkins:

"* * * I believe there is a definite function of overlay which has amplified and accentuated the disability wherein his lack of performance and lack of activity and his subjective complaint is at a marked disparity with his organic and physical and objective findings as demonstrated to me. I believe there are definite hysterical features in this man's behavior and that while there is a definite cause-effect relationship between his disability and the accident, I do believe that his response has been an exaggerated one which is probably in good measure subconscious and which is not typical of true malingering but does have features of hysteroid nature." (Report of Apr. 8, 1964).

Dr. Elkins in his report of July 26, 1963, also voluntarily furnished defendant, concluded that "Mr. Chastain has a severe sprain of the muscles and ligaments in the lumbo sacral area and just when he is going to reach maximum improvement we are unable to state." On October 2, 1963, the same doctor made a progress report, stating that "It is our opinion that Mr. Chastain has a permanent partial disability to his lower lumbar area; namely, a strain of the muscles and ligaments of the lumbo sacral area and we estimate the amount of permanent partial disability to him at this time as being twenty-five percent (25%) of the body as a whole." Subsequent reports seen by the defendants were to the same effect.

---

conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b) Report of Findings

"(1) If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of the detailed written report of the examining physician setting out his findings and conclusions. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination, previously or thereafter made, of the same mental or physical condition. If the party examined refuses to deliver such re-port the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

█ I give these details of the delivered reports both for the purpose of indicating that the withheld report is germane and relevant to some of the reported views and also to indicate, for its limiting effect, the context of my ruling. I do not intend to rule so broadly as that everything included in a report of a physical examination, no matter how irrelevant or gratuitous, must be deemed a proper part thereof to be revealed to opposing counsel. There may be matters so clearly beyond the competence of the examining physician or so irrelevantly prejudicial as to justify deletion even as a matter of discovery. But such is not the case here.

█ The report from Dr. Elkins which plaintiff's counsel wishes to withhold from the defendants, adds little to what was stated in Dr. Capel's report of April 8, first above quoted, concerning some possible hysterical features of the injured person's reaction. It is true that Dr. Elkins included a somewhat gratuitous comment (labeled "confidential") concerning the possible composing effect that a termination of litigation might accomplish, the precise wording of which was unfortunate. Yet the overall purport of the comment cannot be deemed irrelevant. This could have been just another way Dr. Elkins had of saying, as Dr. Capel later suggested, that despite organic injury there were also features of hysteria involved, however real or serious the latter might be. Unless its substance were known as a part of the entire series of reports, the opposing party might have an incomplete or inaccurate concept of Dr. Elkins' views.[2]

██ Where medical reports are exchanged, even though voluntarily, between parties to litigation, it may be assumed by both the parties and the court, in the absence of notice to the contrary, that the substance and result will be in general harmony with the discovery contemplated by Rule 35. Waiver by plaintiff of a court order does not also constitute a waiver of a defendant's right to a copy of plaintiff's reports any more than it constitutes a waiver of plaintiff's right to have a copy of the examiner's report. Cf. Kelleher v. Cohoes Trucking Co., D.C.S.D.N.Y., 25 F.Supp. 965 (1938); Rutherford v. Alben, D.C.S.D. W.Va., 1 F.R.D. 277 (1940); Lipshitz v. Bleyhl, D.C.E.D.N.Y., 5 F.R.D. 225 (1946); Nedimyer v. Pennsylvania R. R. Co., D.C.C.D.Pa., 6 F.R.D. 21 (1946). If this were not so, the present commendable cooperation of counsel in voluntarily providing for independent physical examinations, and the exchange of reports among counsel, would be discouraged; and burdensome recourse to the court for an order in every case might be rendered necessary in order to document fair intendments implicit in the situation.

█ It is to be expected that physicians and others called upon to make written reports for use in connection with litigation, whether pending, contemplated or possible, will express their candid opinion or judgment with the idea that findings should be the same irrespective of the side to which the report is furnished. Confidential addenda or qualifications intended merely for one side seem inconsistent with the professional obligation of the doctor and the spirit of Rule 35.[3]

██ Counsel of course should not edit reports or suggest their being rewritten to correspond with partisan ideas or desires. This, too, would be inconsist-

---

2. Actually there is little possibility, no matter how the court rules on the present problem, that the comment in question could be suppressed, since if Dr. Elkins' testimony or other statements are to be used at the trial, the missing report doubtlessly would be the subject of further inquiry.

3. Of course should revelation of his precise condition to a patient be deemed inimical to the patient's welfare the dissemination of the report among only counsel and the court would be properly recommended by the physician.

ent with the spirit of Rule 35 and the professionalism to be expected under the circumstances. If there are matters in the report deemed extraneous or unjustifiably prejudicial, the report should be withheld only upon notice to opposing counsel, so that the court after *in camera* examination can make a ruling. Counsel for plaintiff is to be commended for his forthright and circumspect procedure in this respect.

The plaintiff is directed to supply to defendants' counsel a copy of the report in question. The original lodged with the court for *in camera* examination is being returned to plaintiff's counsel.

This ruling is with respect to discovery only, and it is not intended to pass upon the extent, if any, the report can be utilized at the trial.